UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., d/b/a INTEGRATED SPORTS MEDIA | § § § § | |
| v. | § | CIVIL NO. 4:24-CV-788-SDJ |
| LIMA TAVERNA PLANO, LLC, ET AL. | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Innovative Sports Management, Inc., d/b/a Integrated Sports Media's Motion for Default Judgment and Brief in Support (the "Motion"). (Dkt. # 15). After full consideration, the Court finds that the Motion should be **GRANTED**.

## I. BACKGROUND

Innovative Sports Management, Inc., d/b/a Integrated Sports Media ("ISM") is a company in the business of marketing and licensing commercial exhibitions of pay-per-view prizefights and other events. (Dkt. #15 ¶ 2). ISM held the exclusive authorization to sub-license the closed-circuit telecast of a September 2, 2021, soccer match between Peru and Uruguay (the "Broadcast") at theaters, arenas, bars, clubs, lounges, and restaurants throughout Texas. (Dkt. #1 ¶ 6). The Broadcast was not intended for the "use of the general public," and could only be shown in commercial establishments with contractual authorization from ISM. (Dkt. #1 ¶ 7). The Broadcast was available for purchase and any individual or entity that purchased the Broadcast was "authorized to receive, transmit and publish" it. (Dkt. #1 ¶ 10).

Commercial establishments that obtained a sub-license from ISM to show the Broadcast were provided with the "electronic decoding capability and/or satellite coordinates necessary to receive the signal of the [Broadcast]." (Dkt. #1 ¶ 11).

Defendant Lima Taverna Plano, LLC is a Peruvian restaurant in Plano, Texas. (Dkt. #1 ¶ 2); (Dkt. #15 ¶ 3). Defendant Eliseo Figueroa is the owner and/or manager of Lima Taverna. (Dkt. #1 ¶ 3). ISM alleges that "either by satellite transmission or through unauthorized receipt over a cable system, Defendants willfully intercepted or received" the Broadcast or, alternatively, "assisted in the receipt of the interstate communication of the [Broadcast]." (Dkt. #1 ¶ 12). Defendants then "transmitted, divulged, and published the [Broadcast], or assisted in transmitting, divulging, and publishing said communication, to patrons" within their restaurant. (Dkt. #1 ¶ 12). ISM alleges that Defendants advertised that they would be showing the Broadcast on social media, and ISM's Auditor personally observed the Broadcast being exhibited on four big screen televisions while Defendants sold food and drinks to patrons inside their restaurant. (Dkt #15 ¶¶ 7, 8, 10).

ISM filed suit against Defendants for unauthorized interception and broadcast under either 47 U.S.C. §§ 553 or 605 (Communications Act).[1] (Dkt. # 1 ¶ 17). Defendants were timely served and have failed to respond for over two years. (Dkt. #3, #4, #5, #6). ISM has filed for, and the clerk's office entered, default as to both Defendants. (Dkt. #13, #14). ISM now moves for default judgment on its claims,

[1] While ISM pleads in the alternative under both 47 U.S.C. §§ 553 and 605, the Motion only seeks relief authorized by Section 605. Consequently, this order awards relief only as to ISM's cause of action for violations of 47 U.S.C. § 605.

requesting statutory damages, additional willfulness damages, and attorney's fees and costs under 47 U.S.C. § 605. (Dkt. #15).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the conditions upon which default may be entered against a party and the procedure to seek entry of a default judgment. *See* FED. R. CIV. P. 55. Securing a default judgment involves a three-step procedure: (1) the defendant's default; (2) the entry of default; and (3) the entry of default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A "default" occurs when the defendant does not plead or otherwise respond to the complaint. *Id.* An "entry of default" is the notation the clerk makes after the default is established by affidavit. *Id.* The plaintiff may then apply for a judgment by the court based on this default—a "default judgment." *Id.*

Entry of default judgment is within the court's discretion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Still, "[c]ourts in the Fifth Circuit utilize a three-part analysis" to determine whether a default judgment is appropriate: "1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, No. 4:16-CV-606, 2017 WL 2600318, at *1 (E.D. Tex. June 15, 2017) (citing *Lindsey*, 161 F.3d at 893). By defaulting, the defendant "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Nishimatsu Constr. Co. v. Hous.*

*Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citing *Ohio Cent. R.R. Co. v. Ctr. Tr. Co.*, 133 U.S. 83, 10 S.Ct. 235, 33 L.Ed. 561 (1890)). On the other hand, "a defendant's default does not concede the truth of allegations of the complaint concerning damages." *Graham*, 2017 WL 2600318, at *1 (citation omitted).

## III. DISCUSSION

Because Defendants have not answered or otherwise appeared, and because ISM has obtained an entry of default against Defendants, (Dkt. #14), the first two requirements for a default judgment have been met. The only remaining issue is whether a default judgment should be entered. *N.Y. Life Ins.*, 84 F.3d at 141. For the reasons below, the Court finds that default judgment is warranted.

### A. Default Judgment is Procedurally Warranted

Before granting a default judgment, "[t]he Court must first determine whether a default judgment is procedurally warranted," which involves six factors:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of the default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Griffin v. O'Brien, Wexler, & Assocs., LLC*, 680 F.Supp.3d 772, 780–81 (E.D. Tex. 2023). The Court finds that the six factors above weigh in favor of finding that default judgment is procedurally warranted against Defendants.

First, there are no issues of material fact. When a defendant defaults, it "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."

*Nishimatsu*, 515 F.2d at 1206. Here, Defendants failed to answer the complaint or otherwise appear. As a result, Defendants have admitted ISM's well-pleaded factual allegations.

Second, ISM has been substantially prejudiced by Defendants' failure to appear. When a defendant fails to respond to a lawsuit, the adversarial process is brought to a halt, resulting in prejudice to the plaintiff's interests. *Ins. Co. of the West v. H&G Contractors, Inc.*, No. C–10–390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011). Here, ISM has already been prejudiced by the two-year delay caused by Defendants' failure to answer the complaint, and ISM will be further prejudiced absent a default judgment.

Third, the grounds for default judgment are clearly established. When a defendant fails to respond "to the summons and complaint, the entry of default, or the motion for default," then the grounds for default are clearly established. *Graham*, 2017 WL 2600318, at *2 (citation omitted); *see also* FED. R. CIV. P. 55(a). As described herein, Defendants were served in accordance with the Federal Rules. (Dkt. #3, #4, #5, #6). Defendants were then required to serve an answer or otherwise respond. As of the date of this order, they have not. Thus, the Court finds that the grounds for default against Defendants are clearly established.

Fourth, nothing in the record shows that Defendants' default is due to excusable neglect or good-faith mistake. Again, Defendants were properly served. (Dkt. #3, #4, #5, #6). Defendants neither responded nor offered evidence to show that

their failure to respond was due to a "good faith mistake or excusable neglect[.]" *Lindsey*, 161 F.3d at 893.

Fifth, Defendants' failure to file any responsive pleading or motion mitigates the harshness of a default judgment. *Am. Heritage Life Ins. Co. v. Mitchell*, No. 6:15-CV-95, 2016 WL 3883029, at *3 (E.D. Tex. May 24, 2016), *report and recommendation adopted*, 2016 WL 3855257 (E.D. Tex. July 15, 2016). ISM followed the necessary procedural steps to obtain an entry of default. Because Defendants could have responded during this litigation and chose not to, a default judgment is not unduly harsh.

Sixth, nothing in the record suggests that ISM has contributed to the delay of this action or otherwise gives the court any reason to set aside the clerk's entry of default. Thus, ISM has met the procedural requirements for default judgment.

**B. There is a Sufficient Basis for Default Judgment**

After establishing that default judgment is procedurally warranted, the Court must determine whether there is a sufficient basis for judgment. *Nishimatsu*, 515 F.2d at 1206. Although Defendants have now functionally admitted the allegations set forth in the Complaint, the Court must review the pleadings to determine whether the Complaint presents a sufficient basis for relief. *Id.*

The Fifth Circuit "draw[s] meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015). "Rule 8(a)(2) requires a pleading to contain a short and plain statement of the claim showing that the pleader

is entitled to relief." *Id.* (quotations omitted). Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (footnote and citations omitted)). This "low threshold" pleading standard "is less rigorous than that under Rule 12(b)(6)." *Cunningham v. Crosby Billing Servs., Corp.*, No. 4:18-CV-43, 2018 WL 6424792, at *4 (E.D. Tex. Oct. 14, 2018) (citation omitted). But only well-pleaded facts, not conclusions of law, are presumed true. *Nishimatsu*, 515 F.2d at 1206.

After reviewing ISM's pleadings and all the evidence before it, the Court finds that ISM has sufficiently pleaded claims for the unauthorized publication or use of communications to warrant the entry of default judgment against Defendants for a violation of 47 U.S.C. § 605.

ISM has proven that Defendants are liable for unauthorized reception of wire or radio service under the Federal Communications Act. Section 605 of the Federal Communications Act prohibits the unauthorized reception of wire or radio service by stating that:

> [N]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein

> contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a).

"The [Federal Communications Act] is a strict liability statute, and the plaintiff is required only to prove the unauthorized exhibition of the intercepted transmission." *Joe Hand Promotions, Inc. v. Macias*, No. CIV.A. H-11-1773, 2012 WL 950157, at *2 (S.D. Tex. Mar. 19, 2012).

ISM has provided undisputed evidence that it had the exclusive authority to license the Broadcast, (Dkt. #15-2 at 3); (Dkt. 15-3), and that Defendants exhibited the Broadcast at their restaurant without contracting with ISM. (Dkt. #15-4). The record includes a copy of a letter from GOL TV LatinAmerica S.A. to ISM, confirming that ISM had exclusive rights to distribute and authorize the Broadcast. (Dkt. #15-3). ISM also included a Declaration from its investigating attorney, Thomas P. Riley, stating that ISM had the exclusive rights to distribute the Broadcast, that the cost to sublicense the Broadcast for a venue the size of Defendants' restaurant would be $1,825, and that Defendants never entered into a commercial sublicense agreement with ISM to broadcast the Broadcast at their establishment. (Dkt. #15-2). An Affidavit of John C. Sieminski established that Defendants displayed the Broadcast at their restaurant on four televisions, that the restaurant had a capacity to seat approximately 146 people with between eight to eleven people in the restaurant at the time, and that Defendants sold food and alcohol during the broadcast. (Dkt. #15-4). ISM also submitted a YouTube link of a video of the Defendants displaying Broadcast to corroborate the Affidavit. (Dkt. #15-11). Thus, ISM has proven that

Defendants engaged in the unauthorized exhibition of the Broadcast in violation of 47 U.S.C. § 605.

**C. Remedies**

Because there is a sufficient basis in the pleadings for default judgment, the Court must next look at the issue of damages. ISM requests statutory damages, damages for willful violations of Section 605, and attorney's fees. Normally, damages are not awarded without an evidentiary hearing. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). "That rule, however, is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Id.* Here, ISM requests damages that are capable of mathematical calculation, so a hearing is unnecessary. For the following reasons, the Court finds that ISM is entitled to all requested relief.

**i. Statutory Damages**

ISM elects to recover statutory damages for the unauthorized publication or use of communications under 47 U.S.C. § 605. (Dkt. # 15 ¶ 6). It requests that the Court award the statutory maximum of $10,000. (Dkt. #15 ¶ 25).

ISM has supplied the Court with factual allegations supported by evidentiary documentation to show that it has suffered damages due to Defendants' violations of 47 U.S.C. § 605. For violations of Section 605, a court may award actual damages or "statutory damages for each violation of subsection (a) involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

> Courts use various methods to determine what statutory amount is just. Courts have calculated damages based on a flat sum, the number of patrons at the time of the violation, and the cost for the licensing fee for the telecast—sometimes even tripling the fee. In determining damages, the Court also considers the purpose of the Communications Act—to deter parties from pirating future broadcast.

*J&J Sports Prods., Inc. v. Kirkpatrick*, No. 4:18-cv-301, 2020 WL 5504469, at *10 (E.D. Tex. Sept. 11, 2020) (citation omitted).

The court may exercise its discretion in awarding statutory damages when actual damages are difficult to determine. *F.W. Woolworth Co. v. Contemp. Arts*, 344 U.S. 228, 232–33, 73 S.Ct. 222, 97 L.Ed 276 (1952). "[T]here is no universal approach to calculating damages." *J&J Sports Prods., Inc. v. Rivera*, No. 4:18-cv-00298-ALM-KPJ, 2019 WL 2387397, at *4 (E.D. Tex. Mar. 15, 2019), *report and recommendation adopted*, 2019 WL 1553672 (E.D. Tex. Apr. 10, 2019).

ISM has established that Defendants could have purchased rights to the Broadcast for $1,825 with a $550 installation fee. *See* (Dkt #15-5) (based on a rate of $12.50 per person with a capacity of 146 people). As such, ISM is entitled to a baseline of at least $2,375 in damages.

However, in cases such as this, courts have determined that it is necessary to increase the damages when the conduct is willful, finding that awarding damages in the amount of the sublicensing fee is not an appropriate deterrent. *See Rivera*, 2019 WL 2387397, at *4 ("Some courts, however, have concluded that simply awarding damages in the amount of the licensing fee is not a deterrent, and have multiplied damages, to compensate 'for the money saved by not complying with the law, as well as any profits made from food and drink sales associated with customers

who stayed and watched the fight.'" (quoting *Joe Hand Promotions, Inc v. Garcia*, 546 F.Supp.2d 383, 386) (W.D. Tex. 2008))).

The Court finds that ISM is entitled to recover double its baseline damages—$4,750. *See G&G Closed Circuit Events, LLC v. Martinez*, No. 4:24-CV-00394-SDJ-AGD, 2026 WL 860483, at *5 (E.D. Tex. Mar. 9, 2026) (awarding double statutory damages as deterrence for future violations), *report and recommendation adopted*, 2026 WL 855158 (E.D. Tex. Mar. 27, 2026); *Joe Hand Prods., Inc. v. Immy & Asfo LLC*, No. 4:19-CV-539, 2021 WL 1139748, at *6 (E.D. Tex. Jan. 19, 2021) (same), *report and recommendation adopted*, 2021 WL 1123300 (E.D. Tex. Mar. 24, 2021). An award of $4,750 falls within the statutory range of $1,000 to $10,000. 47 U.S.C. § 605(e)(3)(C)(i)(II).

**ii. Damages for Willful Violation of Section 605**

ISM seeks an additional $50,000 in damages, increasing the statutory damages based on Defendants' willfulness. (Dkt. #15 ¶ 25). "In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000." 47 U.S.C. § 605(e)(3)(C)(ii). "Conduct is willful if it is marked by a careless disregard for the governing statute and an indifference to its requirements. Such conduct must not only be willful, but it must also be for purposes of direct or indirect commercial advantage or private financial gain." *Kirkpatrick*, 2020 WL 5504469, at *10 (citations omitted).

In determining willful damages, "courts have considered such factors as the number of televisions on which defendants displayed the Broadcast, the food and beverages it sold to customers, as well as the cover charge, and whether it was broadcast in a relatively urban city where the broadcast would have more than a minimal impact." *Joe Hand Promotions, Inc v. 152 Bronx, L.P.*, 11 F.Supp.3d 747, 756 (S.D. Tex. 2014) (footnotes omitted).

The Court finds that Defendants' conduct was willful and for commercial advantage or private financial gain. Taking ISM's well-pleaded allegations as true, the undisputed facts show that: (1) Defendants advertised the Broadcast on social media to draw in patrons; (2) Defendants sold food and alcoholic beverages during the broadcast of the Broadcast; and (3) the Broadcast was displayed on four televisions at the establishment. (Dkt. #15-4). Thus, Defendants willfully violated 47 U.S.C. § 605 for commercial advantage or private financial gain, and enhanced damages for their willful conduct is reasonable.

However, courts should be "mindful that the purpose of willfulness damages is not to put Defendants out of business." *Immy & Asfo LLC*, 2021 WL 1139748, at *7 (citing *J&J Sports Productions, Inc. v. Lava Ent. Grp., LLC*, No. EP-14-CV-441-KC, 2016 WL 11578833, at *5 (W.D. Tex. Apr. 6, 2016)). Accordingly, the Court finds that increased damages in the amount of $14,250, treble the amount of statutory damages, is reasonable in this case.

**iii. Attorney's Fees and Costs**

The Court concludes that ISM is entitled to reasonable attorney's fees. *See* 47 U.S.C. § 605(e)(3)(B)(iii) ("The court . . . shall direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails."). ISM requests attorney's fees in the amount of one-third of the damages recovered as a contingency fee, or in the alternative, the hourly time presented in the Declaration of David M. Diaz. (Dkt. #15-6). Courts have considered it reasonable in anti-piracy cases to award attorney's fees in the amount of one-third of the total damages recovery. *See, e.g., Rivera*, 2019 WL 2387397, at *6. The Court finds that ISM's request is reasonable, and awards ISM $6,333. ISM also requests costs and post-judgment interest at the highest lawful rate, as well as findings for conditional post-trial or appellate services and costs. (Dkt. #15 ¶¶ 24–25). The Declaration of David M. Diaz sets forth reasonable post-trial or appellate services and costs. (Dkt. #15-6).

## IV. CONCLUSION

It is therefore **ORDERED** that Plaintiff Innovative Sports Management, Inc. d/b/a Integrated Sports Media's Motion for Default Judgment, (Dkt. #15), is **GRANTED**. In particular, the Court holds as follows:

1. ISM has shown that it is entitled to a default judgment against Defendants. Defendants have violated 47 U.S.C. § 605.

2. The Court awards ISM statutory damages in the amount of Four Thousand Seven Hundred Fifty Dollars ($4,750) pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II);

3. The Court awards ISM willfulness damages in the amount of Fourteen Thousand Two Hundred Fifty Dollars ($14,250) pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

4. The Court awards ISM attorney's fees to represent one-third of the damages recovered for a total amount of Six Thousand Three Hundred Thirty-Three Dollars ($6,333);

5. The Court awards ISM court costs and post-judgment interest on the amounts awarded in the Judgment at the appropriate annual rate calculated from the date of the judgment until paid; and

6. The Court awards ISM a conditional award of attorney's fees from Defendant in the following circumstances:

    a) Ten Thousand Dollars ($10,000) in the event a Defendant files a motion to vacate, Rule 60 motion, motion for new trial, motion for reconsideration or other post-judgment, pre-appeal motion that does not result in a reversal of the Judgment obtained in this action;

    b) Twenty-Five Thousand Dollars ($25,000) in the event a Defendant files an appeal to the Fifth Circuit Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

    c) Five Thousand Dollars ($5,000) in the event a Defendant files a motion for rehearing or reconsideration in the Court of Appeals that does not result in a reversal of the Judgment obtained in this action;

    d) Twenty-Five Thousand Dollars ($25,000) for making and/or responding to a petition for certiorari to the U.S. Supreme Court that does not result in a reversal of the Judgment obtained in this action;

    e) Seventy-Five Thousand Dollars ($75,000.00) for an appeal to the United States Supreme Court in the event a petition for certiorari review is granted and does not result in a reversal of the Judgment obtained in this action; and

    f) For collection of the Judgment, Two Thousand Five Hundred Dollars ($2,500) each time ISM obtains a writ of execution, writ of garnishment, writ of attachment or other post-judgment writ.

7. Defendants Lima Taverna Plano, LLC and Eliseo Figueroa shall be jointly and severally liable for all damages, fees, costs, and interest awarded herein.

**So ORDERED and SIGNED this 17th day of August, 2026.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE